**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| TIMOTHY RUNDLE; Z.R., by and through her Guardian, Timothy Rundle; LUCIA SINGER; G.M., by and through his Guardian, Lucia Singer; TAMARA HARRISON; T.T. (F) and T.T. (M), by and through their Guardian, Tamara Harrison; TIFFANY PRICE; and E.J., B.J., M.C., and E.C., by and through their Guardian, Tiffany Price,<br><br>Plaintiffs.<br><br>v.<br><br>SNOWFLAKE, INC. and DOES 1-50<br><br>Defendants. | **Case No.** CV-25-49-BU-BMM |

**CLASS ACTION COMPLAINT**

## INTRODUCTION

1. Data companies are acutely aware of the critical importance of cybersecurity in an increasingly interconnected world. With the exponential growth of cloud storage, companies are entrusted with sensitive information, ranging from personal details to financial records.

2. This is a "hub-and-spoke" data breach case. The "hub" in this case is Defendant Snowflake, which is a company that specializes in cloud-storage technologies to warehouse and secure sensitive data, and in selling data storage and analytics products. Snowflake sells its data storage services to numerous companies, or "spokes," who store information on Snowflake's data cloud. These spokes included one or more vendors of the Los Angeles Unified School District ("LAUSD"), the names of which are not yet known but are included as Doe Defendants 1-50.

3. Defendants Snowflake and Doe Defendants (together "Defendants") did not keep the personal information of LAUSD students and families secure.

4. Defendants have long understood and acknowledged the importance of robust cybersecurity to protect consumer data. Information security policies and practices are imperative to ensuring that sensitive information is not exposed to unauthorized third parties. These exposures, commonly referred to as "data breaches," can cause significant harm to individuals—exposing them to fraud and

attempted fraud, identity theft, reputational harm, and the continuing risk of harm that results from criminals having their sensitive information.

5. A single data breach can result in catastrophic consequences for individuals. As a result, and based upon legal and industry-standard requirements, companies prioritize robust cybersecurity measures.

6. In this case, however, none of the Defendants implemented the most basic and industry-standard cybersecurity policies to protect Personal Information, including most prominently, multifactor authentication (MFA).[1] The foreseeable result: a data breach.

7. The cybercriminal group known by codename UNC5537 used compromised login credentials, plugged them in to Spoke Defendants' Snowflake accounts, and successfully exfiltrated Personal Information belonging to hundreds of millions of consumers and students.

8. UNC5537's success was made possible by basic data security failings on the part of Defendants. These companies collectively flouted relevant governmental guidance, regulations, statutes, and industry standards.

---

[1] "Personal Information," as used herein, refers to that information which was exposed to cybercriminals through the Data Breach. Each Doe Defendant protected that information behind credentials (i.e., a username and password), intending that it not be exposed to unauthorized third parties. As alleged herein, inadequate, negligent, and reckless cybersecurity practices by Snowflake and Doe Defendants resulted in that information being exposed.

9. The Data Breach's foreseeable consequences are neither imaginary nor hypothetical: shortly after the Data Breach, sensitive information previously stored with Snowflake began appearing for sale on the dark web.[2]

10. Plaintiffs and Class Members[3] now face the real and actual harm that the Data Breach has caused them and will continue to cause them. Not only have cybercriminals obtained valuable and sensitive Personal Information about them, but that information has been obtained by other criminals and offered for resale to still more criminals. Moreover, Defendants have not yet notified the hundreds of thousands of victims of this sensitive data exposure. As a result, Plaintiffs and Class Members have already experienced fraud or attempted fraud, an invasion of their privacy, and they are at significant risk of identity theft, reputational harm, and other injuries. But many have not received the information they need to begin to mitigate the harm.

11. Each Defendant bears responsibility for its role in the Data Breach. Despite their experience and sophistication, Defendants were negligent and reckless

---

2 Snowflake Breach Threat Actor Offers Data of Cloud Company's Customers, SOCRadar, https://socradar.io/overview-of-the-snowflake-breach/ (last visited Jan. 13, 2025).

3 "Class Members" refers to those individuals who were impacted by the Data Breach. Specific class definitions for each Defendant are provided in the relevant sections.

12. for failing to implement basic and routinely required cybersecurity practices to protect Plaintiffs' and Class Members' Personal Information.

## PARTIES

### I. Defendants

13. **Snowflake, Inc.** is a cloud-based data storage company incorporated under Delaware law, with its principal place of business located at 106 E. Babcock Street, Suite 3A, Bozeman, Montana.[4]

14. **Defendants Does 1-50** ("Doe Defendants"). Plaintiffs do not know the true names and capacities of the Doe Defendants, and therefore sue them by fictitious names. When their true names and capacities are discovered, plaintiffs will seek leave to amend this complaint by inserting those true names and capacities. On information and belief, Doe Defendants may include, individuals, businesses, corporations, partnerships, associations, joint ventures, defendants that are government in nature, as well as product manufacturers, professionals, contractors, and/or all other types of entities and/or individuals as discovery in the matter may reveal. Regardless, Plaintiffs allege that each of the Doe Defendants is legally responsible for the Data Breach and legally caused and was a substantial factor in the injury and damages to Plaintiffs.

---

[4] Snowflake Inc. 2024 10-K at 1.

## II. Plaintiffs

15. **Plaintiff Timothy Rundle** is a citizen of California residing in Los Angeles. Plaintiff Rundle is the parent and legal guardian of a minor student, **Plaintiff Z.R.**, who is also a citizen of California, and is currently enrolled in an elementary school in the Los Angeles Unified School District and has been enrolled there since 2019.

16. Both Plaintiff Rundle's and Plaintiff Z.R.'s Personal Information was maintained by LAUSD and stored in databases hosted or managed through Doe Defendants and Snowflake. They were thereby consumers of services provided by the Doe Defendants and Snowflake. Plaintiff Rundle learned through public news reports that LAUSD was among the organizations whose student data had been exfiltrated during the Data Breach. Neither Plaintiff Rundle nor Plaintiff Z.R. has received a data breach notice from LAUSD, Snowflake, or any other entity notifying them of the breach or confirming whether Plaintiff Rundle or Plaintiff Z.R.'s information was compromised.

17. The absence of any meaningful guidance or notification from LAUSD, Snowflake, or the Doe Defendants has significantly hampered Plaintiff Rundle's ability to respond effectively to the Data Breach on behalf of himself and his minor child. Left to navigate the situation on his own, he has spent significant time independently researching public news reports and available resources to educate

himself on what data may have been compromised. He has learned that the Data Breach may have included student names, addresses, and dates of birth; academic records; discipline histories; disability and health-related records; and parent and guardian contact details; as well as family financial, demographic, and citizenship or immigration information. Without knowing whether his or his child's information was among the data exfiltrated, he remains unable to take targeted steps to protect his family. His research efforts have been time-consuming and distressing, and it has disrupted his peace of mind as a parent—especially because his child is only in elementary school and already faces an elevated risk of identity theft. Plaintiff Rundle is particularly concerned that the data may include his child's academic, disability, and health-related records. Although he and his wife already had credit freezes in place for themselves before the Data Breach, he has since devoted further time and effort to researching credit monitoring and freezing services that are available for his minor child. Yet without knowing what data was actually exfiltrated, he cannot take focused, preventative steps to safeguard his family's Personal Information.

18. **Plaintiff Lucia Singer** is a citizen of California residing in Santa Monica. Plaintiff Singer is the parent and legal guardian of a minor student, **Plaintiff G.M.**, who is a citizen of California and is currently enrolled in an

elementary school in the Los Angeles Unified School District and has been enrolled there since 2021.

19. Plaintiff Singer's and Plaintiff G.M.'s Personal Information was maintained by LAUSD and stored in databases hosted or managed through Doe Defendants and Snowflake. They were thereby consumers of services provided by the Doe Defendants and Snowflake. Plaintiff Singer learned from friends and fellow parents that LAUSD was among the organizations whose student data had been exfiltrated during the Data Breach. Neither Plaintiff Singer nor Plaintiff G.M. has received a data breach notice from LAUSD, Snowflake, or any other entity notifying them of the breach or confirming whether Plaintiff Singer or Plaintiff G.M.'s information was compromised.

20. The absence of any meaningful guidance or notification from LAUSD, Snowflake, or the Doe Defendants has left Plaintiff Singer without the information she needs to respond effectively to the Data Breach. She did not learn of the breach through any official source, but instead heard about it through word of mouth among friends and fellow parents in her community. She understands from other parents and public reporting that the Data Breach may have included student names, addresses, and dates of birth; academic records; discipline histories; disability and health-related records; parent and guardian contact information; and family financial, demographic, and citizenship or immigration details. She is equally

alarmed by the thought that her young child's academic records could follow him/her through the public sphere for years to come, even though he/she is only in elementary school. The uncertainty and fear of what could be done with this information has caused her ongoing distress and undermined her peace of mind as a parent. Without a clear understanding of what data was exposed, Plaintiff Singer remains unable to take informed or protective measures to safeguard her family. However, she has spent time telling other LAUSD parents about the Data Breach in an effort to educate them so they can conduct their own research and take whatever measures they think appropriate to protect their and their children's Personal Information.

21. **Plaintiff Tamara Harrison** is a citizen of California residing in Palmdale. Plaintiff Harrison is the parent and legal guardian of two minor students, **Plaintiffs T.T. (F) and T.T. (M)**, who are citizens of California and are currently enrolled in high school in the Los Angeles Unified School District and have been enrolled there since prior to the Data Breach.

22. Plaintiff Harrison's and Plaintiffs T.T. (F) and T.T. (M)'s Personal Information was maintained by LAUSD and stored in databases hosted or managed through Doe Defendants and Snowflake. They were thereby consumers of services provided by the Doe Defendants and Snowflake. Plaintiff Harrison learned from social media that LAUSD was among the organizations whose student data had

been exfiltrated during the Data Breach. Neither Plaintiff Harrison nor Plaintiffs T.T. (F) and T.T. (M) has received a data breach notice from LAUSD, Snowflake, or any other entity notifying them of the breach or confirming whether Plaintiff Harrison or her children's information was compromised.

23. The absence of any meaningful guidance or notification from LAUSD, Snowflake, or the Doe Defendants has left Plaintiff Harrison without the information she needs to respond effectively to the Data Breach. She did not learn of the breach through any official source, but instead heard about it through social media. She understands from public reporting that the Data Breach may have included student names, addresses, and dates of birth; academic records; discipline histories; disability and health-related records; parent and guardian contact information; and family financial, demographic, and citizenship or immigration details. The possibility that her children's medical and mental health records, including counseling information, may now be in the hands of unknown bad actors is frightening to her. She is equally alarmed by the thought that their disciplinary records could follow them through the public sphere for years to come, even though they are still in high school. The uncertainty and fear of what could be done with this information has caused her ongoing distress and undermined her peace of mind as a parent. Without a clear understanding of what data was exposed, Plaintiff Harrison remains unable to take informed or protective measures to safeguard her

family. However, she has spent time telling other LAUSD parents about the Data Breach in an effort to educate them so they can conduct their own research and take whatever measures they think appropriate to protect their and their children's Personal Information.

24. **Plaintiff Tiffany Price** is a citizen of California residing in Los Angeles. Plaintiff Price is the parent and legal guardian of four minor students, **Plaintiffs E.J., B.J., M.C., and E.C.**, who are citizens of California and are currently enrolled in school in the Los Angeles Unified School District and have been enrolled there since prior to the Data Breach.

25. Plaintiff Price's and Plaintiffs E.J., B.J., M.C., and E.C.'s Personal Information was maintained by LAUSD and stored in databases hosted or managed through Doe Defendants and Snowflake. They were thereby consumers of services provided by the Doe Defendants and Snowflake. Plaintiff Price learned from social media that LAUSD was among the organizations whose student data had been exfiltrated during the Data Breach. Neither Plaintiff Price nor Plaintiffs E.J., B.J., M.C., and E.C. has received a data breach notice from LAUSD, Snowflake, or any other entity notifying them of the breach or confirming whether Plaintiff Price or her children's information was compromised.

26. The absence of any meaningful guidance or notification from LAUSD, Snowflake, or the Doe Defendants has left Plaintiff Price without the information

she needs to respond effectively to the Data Breach. She did not learn of the breach through any official source, but instead heard about it through social media. She understands from public reporting that the Data Breach may have included student names, addresses, and dates of birth; academic records; discipline histories; disability and health-related records; parent and guardian contact information; and family financial, demographic, and citizenship or immigration details. The possibility that her children's academic, health, and disability records may now be in the hands of unknown bad actors is deeply distressing to her. She is especially concerned that such private information could follow her children into adulthood and impact their educational or professional opportunities. The uncertainty and fear of what could be done with this information has caused her ongoing distress and undermined her peace of mind as a parent. Without a clear understanding of what data was exposed, Plaintiff Price remains unable to take informed or protective measures to safeguard her family. However, she has spent time telling other LAUSD parents about the Data Breach in an effort to educate them so they can conduct their own research and take whatever measures they think appropriate to protect their and their children's Personal Information.

## JURISDICTION AND VENUE

27. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, and Defendants are citizens of states different from that of at least one class member. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

28. Venue is proper in this District because Defendant Snowflake is domiciled in and has conducted business in this State.

## FACTUAL ALLEGATIONS

29. Los Angeles United School District (LAUSD) has more than 1,000 schools and 540,000 students. It is the second largest public school district (by student population) in the United States and second largest employer in Los Angeles County.

30. LAUSD collects, processes, and holds massive amounts of sensitive, private Personal Information and data for teachers, faculty, staff, parents, and importantly, children. These records include each student's legal name, date and place of birth, sex, and method of birth verification. In addition, the district keeps health records, including immunization histories and health screenings, and stores standardized test results and language proficiency assessments. For students

receiving special education services, records include Individualized Education Programs (IEPs) and 504 Plans. Disciplinary actions and significant information related to the student's family background and home environment are also maintained. Permitted records include teacher evaluations and observations, psychological test results, and behavioral reports. The district also collects personal and contact information about parents and guardians, including names, addresses, telephone numbers, and sometimes citizenship or immigration status where relevant to enrollment or program eligibility.

31. In addition to the Personal Information expected to be held by any large organization, LAUSD provides medical services to students and receives and retains HIPAA-protected records of health care services provided to students. These services are provided in seventeen school-based Health Centers which offer medical services as varied as physical examinations, immunizations, oral health assessments, vision screenings, nutrition assessments, and TB testing to students.[5] Certain LAUSD Health Centers also provide reproductive healthcare services, such as STD testing, birth control, and pregnancy testing.[6]

---

[5] *LAUSD School-Based Health Centers and Services*, LAUSD, https://www.lausd.org/Page/12532

[6] *Id.*

32. LAUSD provides mental health services through Mental Health Clinics for individual and family therapy for LAUSD students as well as a virtual, telemental health program where students can access mental health services. Services include a range of prevention, early intervention and acute mental health assessment and treatments. [7]

33. Moreover, LAUSD maintains deeply sensitive records of students' Individualized Education Programs, 504 Plans, family financial and household information, and immigration status.[8]

34. Every person whose Personal Information is collected and held by LAUSD and its vendors gives that Personal Information based on the understanding that it will be kept safe and, most critically, private.

35. Cloud-based data storage platforms play a crucial role in enabling LAUSD to maintain and access the immense volumes of data it collects and

---

[7] *Id.*

[8] *Cumulative Record Handbook for Secondary Schools*, Los Angeles Unified School District (2017), https://www.lausd.org/cms/lib08/CA01000043/Centricity/Domain/173/Cumulative%20Record%20Handbook.pdf; *Title III Immigrant Education Program Identification Procedures for Eligible Students*, Los Angeles Unified School District (2018), https://www.lausd.org/cms/lib/CA01000043/Centricity/domain/22/policies/REF-062703-Title%20III%20Immigrant%20Education%20Program%20Identification%20Procedures%20for%20Eligible%20Students.pdf.

generates. LAUSD works with one or more vendors to collect, process, and make accessible the Personal Information of its students, faculty, and staff.

36. Given the vast amount of extremely valuable and sensitive Personal Information stored in that Snowflake and vendor repository, they are a prime and lucrative target for threat actors.[9] Cybersecurity experts have been warning for years that "vendors and partners are the most frequent cause of school district data breaches."[10]

37. The Personal Information of children is particularly valuable to criminals because fraudulent use of their data may remain undetected for years. Criminals make use of minors' Personal Information to open accounts or new lines of credit, to create false identities, to obtain credit cards, to rent property, and to access government benefits, healthcare, or employment, using a combination of real and fictitious information which the minor may not realize was stolen. School children whose Personal Information has been breached must live their entire lives knowing private, sensitive information about their personal, school and medical records is subject to public exposure at any time.

---

[9] Emily Wilson, *The Worrying Trend of Children's Data Being Sold on the Dark Web*, TNW (Feb. 23, 2019), https://thenextweb.com/contributors/2019/02/23/children-data-sold-the-dark-web/.

[10] *See, e.g.,* https://www.the74million.org/article/74-interview-cybersecurity-expert-levin-on-the-harms-of-student-data-hacks/ (last accessed May 16, 2025).

38. The data breach ramifications minors experience are thus unique, severe, and exceptionally damaging.

39. Snowflake is one of the largest data storage providers in the United States and it contracts with thousands of organizations around the world to securely store their consumer and employee data on its "Data Cloud" platform.[11] Snowflake's platform is a product and a service that provides companies the ability to store, process, and analyze large volumes of consumer and employee data.[12]

40. Snowflake's marketing highlights the strength of its data security practices as a selling point to its customers:

> Snowflake maintains a "Security Hub" webpage that centralizes updates relating to data security. The header of the Security Hub website provides: "Security has been foundational to the Snowflake platform since the very beginning. Our robust security features help you protect your data so you can achieve the results you need."[13]

41. Doe Defendants are Snowflake customers. Doe Defendants store the Personal Information of hundreds of thousands of LAUSD students, families, and

---

[11] Snowflake, *How It All Started*, https://www.snowflake.com/en/company/overview/about-snowflake/ (last visited Jan. 6, 2025).

[12] Snowflake, *The Snowflake Platform*, https://www.snowflake.com/en/data-cloud/platform/ (last visited Jan. 6, 2025).

[13] Snowflake, *Snowflake Security Hub*, https://www.snowflake.com/en/resources/learn/snowflake-security-hub/ (last visited Jan. 6, 2025).

employees on Snowflake's Data Cloud services, which, on information and belief, include student names, addresses, and dates of birth; academic records; discipline histories; disability and health-related records; parent and guardian contact information; and family financial, demographic, and citizenship or immigration details.

42. Beginning on or around mid-April 2024, a cybercriminal group named UNC5537 carried out a successful cyberattack on Snowflake, exfiltrating the data of hundreds of Snowflake customers, including the Doe Defendants. (the "Data Breach").

43. The events leading up to the Data Breach and its fallout are summarized in a June 10, 2024 report published by Mandiant (the "Mandiant Report"), a cybersecurity firm that assisted Snowflake in its investigation of the Data Breach.[14]

44. UNC5537's successful cyberattack on Snowflake and the /Doe Defendants was simple and easily prevented. As the Mandiant Report put it, the

[14] Mandiant, *UNC5537 Targets Snowflake Customer Instances for Data Theft and Extortion*, Google Cloud (June 10, 2024), https://cloud.google.com/blog/topics/threat-intelligence/unc5537-snowflake-data-theft-extortion ("*Mandiant Report*"). Since Snowflake had a hand in the *Mandiant Report*, the events are likely worse than presented, and will be clarified in discovery. *See also Snowflake Breach: Hacker Confirms Access Through Infostealer Infection*, Hudson Rock, https://archive.is/tljkW (archived website).

cyberattack was "not the result of any particularly novel or sophisticated tool, technique, or procedure" but was the consequence of "missed opportunities" on the part of Snowflake and the Doe Defendants to properly secure their credentials.[15]

45. The Data Breach occurred because Defendants did not follow basic, routinely-adopted, best-practice, necessary, and standard cybersecurity guidelines.

46. According to the Mandiant Report, the success of UNC5537's straightforward cyberattack was made possible by "three primary factors" on the part of Defendants.

47. **First**, Doe Defendants did not have MFA enabled. MFA is a basic and industry-standard cybersecurity measure, available for nearly three decades,[16] that requires a user to, in addition to providing their username and password, further authenticate their identity through another source, such as through a passcode sent by text message or email.[17] Without MFA, a valid username and password was all

---

[15] *Mandiant Report*, *supra* n. 14.

[16] Bojan Šimić, *Identity in the Digital Age and the Rise of Multi-Factor Verification*, Forbes (Oct. 10, 2024), https://www.forbes.com/councils/forbestechcouncil/2024/10/10/identity-in-the-digital-age-and-the-rise-of-multi-factor-verification/ (MFA was developed by AT&T as a system to exchange codes on two-way pagers).

[17] Rose de Fremery, *Tracing the Evolution of Multi-Factor Authentication*, LastPass (Oct. 16, 2023), https://blog.lastpass.com/posts/tracing-the-evolution-of-multi-factor-authentication.

UNC5537 needed to access a Snowflake customer's data—similar to a key placed under a doormat.

48. **Second,** Doe Defendants did not have policies and procedures in place to rotate or disable stale credentials.

49. **Third,** Doe Defendants did not restrict access to Snowflake cloud-based storage based upon certain trusted locations. Conditional Access Policies allow companies to fine-tune access to control from which devices and locations users can access resources. Again, without such protection, a valid username and password entered was all UNC5537 needed to access Defendants' data from anywhere at any time.

50. The Mandiant Report documented the timeline of the Data Breach, which shows a concerning lag in Snowflake's response. Snowflake did not make a public statement regarding the Data Breach until May 30, 2024. Snowflake's public disclosure came over a month and a half after Mandiant identified evidence of improper access to Snowflake customer data on April 14—but only a week after advertisements for the sale of stolen Snowflake customer data started showing up on cybercrime forums on May 24.[18]

51. Doe Defendants' duty to use reasonable care arose from several sources, including that Doe Defendants knew or should have known that the

---

[18] *Mandiant Report*, *supra* n. 14.

information they collected and managed was sensitive, and that failing to take adequate steps to secure and protect the data would foreseeably lead to a data breach which could injure individual LAUSD students.

52. The LAUSD Data Use Agreement (Attachment A-3 to Bulletin No. BUL-1077.2)[19] is a standard contract template that outlines the legal and procedural requirements for any external contractor, vendor, or partner who seeks access to student data or other confidential information maintained by the Los Angeles Unified School District, and such parties may be required to execute this agreement as a condition of providing services to the District.

53. Given the sensitivity of all this data, the Agreement requires vendors like Doe Defendants to take all reasonable and industry appropriate steps to keep that Protected Information secure, including requiring vendors to:

> store and process District Data in accordance with commercial best practices, including appropriate administrative, physical, and technical safeguards, to secure such data from unauthorized access, disclosure, alteration, and use. Such measures will be no less protective than those used to secure Contractor's own data of a similar type, and in no event less than reasonable in view of the type and nature of the data involved. Without limiting the foregoing, Contractor warrants that all electronic District Data will be encrypted in transmission using SSL [(Secure Sockets Layer)] [or insert other encrypting mechanism] (including via web interface) [and stored at no less than 128-bit level encryption].

---

[19] *Information Protection Policy*, L.A. Unified Sch. Dist. (July 18, 2017), https://www.lausd.org/cms/lib/CA01000043/Centricity/domain/386/admin%20cert%202017-2018/BUL-1077.2%20INFORMATION%20PROTECTION%20POLICY_2.pdf.

> "Encryption" means a technology or methodology that utilizes an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key, and such confidential process or key that might enable decryption has not been breached, and shall have the meaning given to such term under HIPAA and HIPAA Regulations, including 45 CFR §164.304.

54. Doe Defendants' data security failings enabled the Data Breach.

55. To date, Doe Defendants have not provided notice to Plaintiffs or Class Members about the nature or extent of the Personal Information that was stolen. Nor have they given the Plaintiffs or Class Members any information about how to protect themselves from the potential misuse of the stolen Personal Information.

56. Plaintiffs' and Class Members' Personal Information have already been sold and exchanged on the dark web by various cybercriminal threat actors including Scattered Spider. On June 1, 2024, around the time of the Data Breach, some of the Personal Information from the Data Breach was advertised for sale on a dark web forum post by a cybercriminal group by the name of "Sp1d3r." A screenshot of this post is provided below.[20]

[20] Lawrence Abrams, *Los Angeles Unified Confirms Student Data Stolen in Snowflake Account Hack*, BleepingComputer (June 21, 2024), https://www.bleepingcomputer.com/news/security/los-angeles-unified-confirms-student-data-stolen-in-snowflake-account-hack/.




**The Data Breach harmed Plaintiffs and Class Members.**

57. The effects of the Data Breach were felt immediately—not only by Defendants—but by individuals. Personal Information is valuable property. Its value is axiomatic, considering the market value and profitability of "Big Data" to corporations in America.

58. Information protected by credentials—usernames and passwords—is intended to stay private, and not disclosed to third parties (otherwise, why password-protect the information, at all?). But because of Defendants' failure to follow basic cybersecurity guidelines, the information stored on Snowflake's cloud-based servers was accessible to cybercriminals, who exfiltrated the data for nefarious purposes.

59. Doe Defendants' failings were particularly egregious given the enormous amount of Personal Information of minors that it stored on Snowflake's servers. Tasked with handling the sensitive data of hundreds of thousands of students, employees, and families, Doe Defendants' failure to implement basic data security measures is all the more inexplicable and reckless.

60. Defendants have failed to disclose what types of Personal Information were exposed in the Data Breach or provide any assistance to the victims of this Breach. Upon information and belief, at least the following LAUSD student data was exposed: student names, addresses, and dates of birth; academic records; discipline histories; disability and health-related records; parent and guardian contact information; and family financial, demographic, and citizenship or immigration details.

61. The Personal Information exposed is extremely valuable and can be used for a number of nefarious purposes.

62. Plaintiffs' Personal Information from this Data Breach has already been found on the dark web.

63. Identity thieves use Personal Information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[21]

---

[21] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. § 603.2.

According to Experian, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to, among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; or obtain a new driver's license or ID.[22]

64. Each additional piece of Personal Information exposed in a data breach increases an individual's risk of identity fraud and exposure to scams. Information from one breach may be combined with information from other breaches to create "fullz"—or complete information about an individual sufficient to facilitate identity theft, allow for the purchase of goods and services on the internet, and enable criminals to open new accounts in a victim's name.[23]

---

The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things: "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number. *Id*.

[22] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Private Information and How Can You Protect Yourself*, Experian (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[23] Robert Lemos, *All about your 'fullz' and how hackers turn your personal data into dollars*, PCWorld (June 2, 2016), https://www.pcworld.com/article/414992/all-about-your-fullz-and-how-hackers-

65. The exposure of Personal Information in the Data Breach has subjected the Plaintiffs to actual and imminent harm that is concrete and particularized.

66. Defendants did not take sufficient steps to protect their customers, and have not done nearly enough to compensate the victims of the Data Breach, who will suffer real harm for years to come.

## **Class Action Allegations**

67. Plaintiffs bring this action on their own behalf, and on behalf the following Class:

> All individuals residing in the United States whose Personal Information was compromised in the Data Breach.

68. Excluded from the Class are Defendants' officers and directors, any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Defendant Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

69. Plaintiffs reserve the right to amend or modify the definition of the Class or create additional subclasses as this case progresses and as they identify the identities of the Doe Defendants.

---

turn-your-personal-data-into-dollars.html; Paige Tester, *What are Fullz? How Hackers & Fraudsters Obtain & Use Fullz*, DataDome (Mar. 3, 2023), https://datadome.co/guides/account-takeover/what-are-fullz-how-do-fullz-work/.

70. **Numerosity.** The members of the Class are so numerous that joinder of all of them is impracticable. Public reporting presently indicates that there are more than 500,000 students in the LAUSD, and many more parents, faculty, and staff whose Personal Information was held by Defendants.

71. **Commonality.** There are questions of fact and law common to the Class, which predominate over individualized questions. These common questions of law and fact include, but are not limited to:

- Whether Defendants had a duty to protect the Personal Information of Plaintiffs and Class Members, and whether they breached that duty.
- Whether Defendants knew or should have known that their data security practices were deficient.
- Whether Defendants data security systems were consistent with industry standards prior to the Data Breach.
- Whether Defendants' failure to require customers to implement MFA, employ credential rotation, and employ other industry standard data security measures violated a standard of care or laws.
- Whether Plaintiffs and Class members are entitled to actual damages, punitive damages, treble damages, statutory damages, nominal damages, general damages, and/or injunctive relief.

72. **Typicality.** Plaintiffs' claims are typical of those of other Class members because Plaintiffs' Personal Information, like that of every other Class Member, was compromised in the Data Breach.

73. **Adequacy of Representation.** Plaintiffs will fairly and adequately represent and protect the interest of the Class members. Plaintiffs' Counsel are competent and experienced in litigating class actions.

74. **Predominance.** Defendants engaged in a common course of conduct toward Plaintiffs and Class members, in that all the data of Plaintiffs and Class Members were stored on the same Snowflake Data Cloud network and unlawfully accessed in the same manner. The common issues arising from Defendants' conduct affecting Class Members listed above predominate over any individualized issues. Adjudication of these common issues in a single action will advance judicial economy.

75. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the claims of the Class. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation.

76. **Injunctive Relief.** Defendants have acted on grounds that apply generally to the Class as a whole such that class certification, injunctive relief, and declaratory relief are appropriate on a class-wide basis.

77. **Issue Certification.** Likewise, certain issues are appropriate for certification because such claims present common issues whose resolution would advance the disposition of this matter.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Negligence
*By Plaintiffs and Class Members Against Snowflake and Doe Defendants 1-50*

78. Plaintiffs repeat and re-allege the allegations above as if fully set forth herein.

79. Defendants owed a duty under common law to the Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, and deleting their Personal Information in its possession from being compromised, stolen, or misused by unauthorized persons.

80. Specifically, this duty included, among other things: (a) implementing industry standard data security safeguards to protect the Personal Information of Plaintiffs and the Class Members such as MFA, rotating credentials, and restricting access privileges; (b) maintaining, testing, and monitoring Defendants' security systems to ensure that Personal Information was adequately secured and protected; (c) timely acting upon warnings and alerts to respond to intrusions; and (d) adequately notifying the Plaintiffs and Class Members about the types of data that were compromised in the Data Breach.

81. Defendants' duty to use reasonable care arose from several sources, including that Defendants knew the information they were storing was private and sensitive, and that failing to take adequate steps to secure and protect the data would foreseeably lead to a Data Breach which could injure individual consumers.

82. Defendants had a common law duty to prevent foreseeable harm to others. This duty existed because Defendants collected and stored valuable Personal Information that is routinely targeted by cyber criminals. Plaintiffs and Class Members were the foreseeable and probably victims of any compromise to inadequate data security practices maintained by Defendants.

83. Defendants breached their duties owed to Plaintiffs and Class Members by failing to maintain adequate data security practices that conformed with industry standards, and were therefore negligent.

84. Doe Defendants breached their duties owed to Plaintiffs and Class Members by failing to exercise reasonable oversight in the selection of Snowflake to store Personal Information. Such reasonable oversight would have revealed that Snowflake's cloud services lacked industry standard data security safeguards necessary to adequately protect Personal Information.

85. But for Defendants' negligence, the Personal Information of Plaintiffs and Class Members would not have been stolen by cybercriminals in the Data Breach.

86. As a direct and proximate result of Defendants' breach of duties, Plaintiffs and Class Members have suffered injuries as detailed herein.

87. As a direct and proximate result of Defendants' negligence, Plaintiffs and Class Members are entitled to damages, including compensatory, general, nominal. and/or punitive damages, in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**Violation of Applicable State Consumer Protection Laws**
*By Plaintiffs and Class Members Against Snowflake and Doe Defendants 1-50*

88. Plaintiffs repeat and re-allege the allegations above as if fully set forth herein.

89. Consumer protection statutes exist to ensure that consumers are protected from unfair, deceptive, and unlawful practices.

90. Plaintiffs are "consumers" based upon appliable state consumer protection statutes, and those statutes were enacted to ensure that Defendants did not engage in unfair, deceptive, and unlawful practices while engaging in trade or commerce.

91. Defendants' conduct offends public policy.

92. As a direct and proximate result of Defendants' unfair trade practices, Plaintiffs and Class Members are entitled to injunctive relief, damages, including actual damages in an amount to be proven at trial or statutory damages, whichever

is greater, treble damages of actual damages, and reasonable attorneys' fees, as applicable under various consumer protection statutes.

93. This cause of action will be amended prior to trial based upon discovery and choice of law.

## RESERVATION OF RIGHTS TO ASSERT ADDITIONAL CLAIMS FOR RELIEF

94. Plaintiffs have asserted claims in this complaint in order to confer subject matter jurisdiction over Defendants so that this case may be transferred to the District of Montana by the Judicial Panel on Multidistrict Litigation.

95. To the extent this case is transferred back to this Court for trial, Plaintiffs reserve the right to assert additional causes of action or amend their causes of action as applicable and based upon discovery and motion practice in the MDL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes set forth herein, respectfully request the following relief:

A. That the Court certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiffs are the proper class representatives; and appoint Plaintiffs' counsel as Class Counsel;

B. That the Court grant permanent injunctive relief to prohibit and prevent Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

C. That the Court determine that any alleged agreements to arbitrate or not to participate in a class action are deemed unenforceable;

D. That the Court award Plaintiffs and Class Members compensatory, consequential, general, and/or nominal damages as appropriate, for each count as allowed by law in an amount to be determined at trial;

E. That the Court award punitive or exemplary damages, to the extent permitted by law;

F. That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of their unlawful acts, omissions, and practices;

G. That Plaintiffs be granted the declaratory and injunctive relief to prevent further injuries from manifesting as alleged herein;

H. That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

I. That the Court award pre-and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper; and

J. Any other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial in the instant action.

Dated: May 19, 2025

Respectfully submitted,

*/s/ Jason S. Rathod*
Jason S. Rathod
**Migliaccio & Rathod LLP**
412 H St NE, Suite 302
Washington DC 20002
Tel. 202.470.3520
jrathod@classlawdc.com

*/s/ Raphael Graybill*
Raphael Graybill
**Graybill Law Firm, PC**
300 4th Street North
Great Falls, MT 59401
Tel. 406.452.8566
raph@graybilllawfirm.com

*/s/ Amy Keller*
Amy Keller
**DiCello Levitt LLP**
Ten North Dearborn, Sixth Floor
Chicago, Illinois 60602
Tel. 312.214.7900
akeller@dicellolevitt.com

*/s/ John Heenan*
John Heenan
**Heenan & Cook**
1631 Zimmerman Trail
Billings, MT 59102
Tel. 406.839.9091
john@lawmontana.com

*/s/ J. Devlan Geddes*
J. Devlan Geddes
**Goetz, Geddes & Gardner P.C.**
35 N. Grand Ave.
Bozeman, MT 59715
Tel. 406.587.0618
devlan@goetzlawfirm.com

/s/Caitlin Boland Aarab
Caitlin Boland Aarab
**Boland Aarab PLLP**
11 Fifth Street N., Suite 207
Great Falls, Montana 59401
Tel. 406.315.3737
cbaarab@bolandaarab.com

/s/David Paoli
David Paoli
**Paoli Law Firm, P.C.**
257 West Front St., Suite A
Missoula, Montana 59802
Tel. 406.542.3330
davidpaoli@paoli-law.com

*Counsel for Plaintiffs and the Putative Class Members*